FILED

MAY 1 7 2017

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

JIM ALBERT HARRIS, BONAR           )
CRUMP JR.,  JUAN CARLOS GARCIA,    )
AND DREW KING                      )
Plaintiffs,                        )
                                   )
V.                                 )          **CIVIL ACTION NO. 1:17-cv-00426**
                                   )
MANUEL CHAVEZ, ABELINO             )
REYNA,  BRENT STROMAN,             )
PATRICK SWANTON, CITY OF           )
WACO, MCLENNAN COUNTY,             )
TEXAS, ROBERT LANNING,             )
JEFFEREY ROGERS, STEVEN            )
SCHWARTZ, CHRISTOPHER FROST        )
WALTER H. "PETE" PETERSON,         )
PEAKTASTIC BEVERAGE, LLC d/b/a     )
TWIN PEAKS RESTAURANT,  FRONT      )
BURNER RESTAURANTS GP LLC, and     )
TWIN RESTAURANT INVESTMENT         )
COMPANY, LLC,  AND JOHN DOES       )

Defendants,

### PLAINTIFFS FIRST AMENDED COMPLAINT & JURY DEMAND

COMES NOW, through their undersigned counsel, PLAINTIFFS JIM ALBERT

HARRIS, BONAR CRUMP JR., JUAN CARLOS GARCIA and DREW KING, herein after

referred to as PLAINTIFFS, and brings this action against the Defendants, MANUEL

CHAVEZ, ABELINO REYNA, BRENT STROMAN, PATRICK SWANTON, ROBERT

LANNING, JEFFERY ROGERS, STEVEN SCHWARTZ, CHRISTOPHER FROST,

WALTER H. "PETE" PETERSON, CITY OF WACO TEXAS, MCLENNAN COUNTY

TEXAS, PEAKTASTIC BEVERAGE, LLC d/b/a TWIN PEAKS RESTAURANT, FRONT

BURNER RESTAURANTS GP LLC, TWIN RESTAURANT INVESTMENT COMPANY,

LLC., and JOHN DOES.

## I.

## INTRODUCTION

1.      This is a claim to recover damages suffered by Plaintiffs as a result of the unlawful arrest and detainment of Plaintiffs on May 17, 2015, outside Twin Peaks Restaurant in McLennan County, Waco, Texas.

2.      Plaintiffs have suffered injuries, damages and/or losses as a direct result of the actions of Defendants.

## II.

## PARTIES

3.      Plaintiff Jim Albert Harris is a resident of Travis County, Texas.

4.      Plaintiff Bonar Crump Jr. is a resident of Hays County, Texas.

5.      Plaintiff Juan Carlos Garcia is a resident of Travis County, Texas.

6.      Plaintiff Drew King is a resident of Hays County, Texas.

7.      Manuel Chavez ("Chavez") is a police officer for the Waco Police Department and is being sued in his individual and official capacity. At all times herein described, he was operating under the color of law.  He may be served with process by serving him at 3115 Pine Ave., Waco, Texas 76708.

8.      Patrick Swanton is the police spokesperson for the Waco Police Department and is being sued in his individual capacity.  He acted under the color of law of the statutes, ordinances, regulations, polices, customs, and usages of the State of Texas.  He may be served with process by serving him at 3115 Pine Ave., Waco, Texas 76708.

9.      Chief Brent Stroman ("the Chief" or "Stroman"), was the Chief of Police of the Waco Police Department and is being sued in his individual capacity.  He acted under the color of law of the statutes, ordinances, regulations, polices, customs, and usages of the State of Texas.  Defendant Stroman may be served with process at 1101 Western Ridge Dr., Waco,

Texas 76712.

10.     John Does are governmental employees and are police officers and/or attorneys for the Waco Police Department, the McLennan County Sheriff's Department, and McLennan County District Attorney's Office, and have not as of yet been identified.  They are being sued in their individual and official capacities and at all times herein described, they were operating under the color of law.

11.     Robert Lanning ("Lanning"), is an Assistant Chief of Police and is employed by the Waco Police Department. Lanning is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Rogers may be served with process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708.

12.     Det. Jeffrey Rogers ("Rogers"), is a police officer employed by the Waco Police Department. Rogers is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Rogers may be served with process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708.

13.     Steven Schwartz (hereinafter "Schwartz") is a special agent employed by the Texas Department of Public Safety (hereinafter "DPS"). Schwartz is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Schwartz may be served with process at his place of business in the Texas Department of Public Safety, 5805 North Lamar Blvd., Austin, Texas, 78752-4431.

14.     Christopher Frost (hereinafter "Frost") is a special agent employed by the

Texas Department of Public Safety. Frost is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Frost may be served with process at his place of business in the Texas Department of Public Safety, 5805 North Lamar Blvd., Austin, Texas, 78752-4431.

15.     Defendant, City of Waco, is a municipal corporation and political subdivision of the State of Texas.  It may be served with process by serving its City Secretary, Esmeralda Hudson, at 300 Austin Avenue, Waco, Texas 76702-2570.

16.     Defendant, County of McLennan, is a County in the State of Texas.  It may be served with process by serving County Judge Scott Felton, Commissioners Court, 501 Washington Ave., Waco, Texas 76701.

17.     Defendant, Abelino Reyna (Reyna) is the elected District Attorney for McLennan County and is being sued in his individual and official capacity.  At all times herein described, he was operation under the color of law.  He may be served with process by serving him at 219 N. 6th St., Waco, Texas  76701.

18.     Defendant Walter H. "Pete" Peterson is the elected Justice of the Peace, Precinct 1, Place 2, of McLennan County and is being sued in his individual and official capacities.  At all times herein described, he was operating under the color of law.  He may be served with process by serving him at 501 Washington Avenue, Suite 108, Waco, Texas 76701.

19.     Defendant Peaktastic Beverage, LLC. d/b/a Twin Peaks Restaurant is a domestic corporation doing business in the State of Texas and had its place of business located at 4671 Jack Kultgen Expy., Waco, Texas 76711.  It may be served by and through its registered agent: Ronak P. Parikh 18900 Dallas Parkway, Suite 125 Dallas, Texas 75287.

20.     Defendant Front Burner Restaurants GP, LLC is a domestic corporation doing business in the State of Texas and has its place of business located at 4803 Broadway St.

Addison, Texas75001.  It may be served by and through its registered agent: Scott Gordon, 4803 Broadway, Addison, Texas 75001.

21.     Defendant Twin Restaurant Investment Company LLC is a domestic corporation doing business in the State of Texas.  It may be served by and through its registered agent Scott Gordon: 4803 Broadway, Addison, Texas 75001.

III.

## JURISDICTION

22.     Jurisdiction over this action exists by reason of the First, Fourth, Fifth, Eight and Fourteenth Amendments of the United States Constitution. 28 U.S.C. §§ 1331, 1343(3) and 1343(4), and 42 U.S.C. (1983).

IV,

## VENUE

23.     Venue is proper in this Court under 28 U.S.C. 1391 (b) (1).

V.

## FACTUAL BACKGROUND

24.     To put the facts of what happened on May 17th, 2015, in their proper perspective, the preceding history of Waco, its city government, its courts, Baylor University, its Southern Baptist tradition, and especially its law enforcement, it is necessary to understand what went wrong on May 17th, 2015, in Waco and why.

25.     Waco Texas, with a population of about 125,000, while not a "small" town, is still not all that big.  Like most well-established towns of comparable size, it has generally been run by an even smaller portion of the established families and personalities who have lived their whole life there.  Many are multi-generational Wacoans. Many attended the local university. The community is rather isolated geographically from other significant population centers. These cultural integration factors in Waco can sometimes be problematic for people who

come from "out of town" as opposed to a being "one of the locals", especially with regards to treatment from law enforcement, and in some instances like this, also the judicial system.

26.     Unlike most towns this size, Waco boasts a nationally known college, Baylor University, that provides a very good, and very expensive, private college education. Baylor was relocated to Waco shortly after the end of the Civil War and over time, became the largest Baptist denomination school in the world. Its roots and values are grounded in the strict Southern Baptist tradition and spread beyond the physical boundaries of the university and throughout a majority of the community. The students are not allowed to drink alcohol on campus or at school related functions. There was even a Puritanical and complete ban on all dancing at the school which was finally modified to allow limited types of 'non-provocative dancing, in 1996. Violators of these strict moral standards are subject to expulsion from the university. While there is nothing wrong in and of itself with this brand of Christianity or these religious restrictions, they are arguably behind the times of the rest of the communities in Texas and around the country and again reflective of a non-tolerant culture which permeates Waco to this day.

27.     Not surprisingly against this backdrop, Baylor University is steeped with scandals, mainly originating from being out of step with the rest of our nation's universities and still trying to compete at the top level in student athletics. Baylor is at a large recruiting disadvantage with their antiquated code of conduct, isolated locale, and small population. With normal college life being what it is, the competition to attract and recruit the best high school athletes became very challenging at best. Baylor has suffered through repeated school endorsed NCAA violations involving, at times, bribes, extortion, alcohol and drug use. Baylor has been run by outwardly religious leaders and coaches who have repeatedly fallen victim to the temptations of the money and prestige that can be obtained by a successful major college athletic program. The most recent athletic scandal at Baylor claimed the head

football coach and the former Baylor President and law school professor, Ken Starr, when the competing interests of Southern Baptist values lost to the temptations of having a successful (and lucrative) athletic program. Just last year, investigations by a law firm found that Ken Starr, other school administrators and coaches had run their own improper investigations and had attempted to cover up allegations of athletes raping female students by choosing not to report the allegations to the administrator outside of athletics. This appears to be a rampant course of conduct involving many dozens of repeat offenses. Nor has this history been isolated, as just last month a new documentary, Disgraced, began running nationally as a comprehensive look back at the Baylor basketball program scandal involving the murder of Patrick Dennehy and a massive cover-up that involved the head coach, alumni and other dignitaries.

28.     The Waco Police Department would be another facet of the community where the mores of Baylor University have arguably retarded the normal progression of city leadership, slowing the changes that occurred long ago in other communities and their law enforcement offices. Blacks and women were not allowed to work for the Waco Police Department until World War II, and only then because the town did not have enough white male applicants due to the war. Waco PD had a rather large motorcycle division, but did away with it altogether in the 1950's, shortly after movies came out like The Wild Ones starring Marlon Brando, which portrayed young "gang members" that rode motorcycles. To this day Waco PD does not have a motorcycle division, and only allows officers to wear their uniform in funeral services on their own personal motorcycles.

29.     It is against this backdrop that what happened at Twin Peaks on May 17, 2015, is better understood. In the town where alcohol use is least frowned upon, outsiders are arguably treated, or at least viewed more harshly, and motorcyclists are viewed by law enforcement as being troublemakers, something like the Twin Peaks tragedy was likely to

happen sooner or later.   Attendees going to Waco for the legislative update meeting sponsored by the Confederation of Clubs and Independents, hereinafter referred to as TEXAS COC&I, were unsuspectingly going to a place they weren't wanted or liked, and where a paranoid and trigger happy faction of local law enforcement had already been preparing for a shootout.   The recipe for disaster was spelled out and the table was set. Heading to Waco were (1) a bunch of motorcycle clubs (2) riding in on their motorcycles from out of town to (3) drink alcohol (4) on a Sunday at (5) a new "breastaurant", where college girls are serving up beer in short skirts.   This was just asking for trouble from local law enforcement and the judicial system even though all of those activities are perfectly legal.

30.    Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King (hereinafter referred to as Plaintiffs) were present at the Twin Peaks restaurant ("Twin Peaks") in Waco, Texas on or about May 17, 2015, **to attend said legislative update on legislation pending in Austin affecting motorcyclists including, ironically, motorcycle profiling.**   This legislative update was sponsored by the Confederation of Clubs and Independents, (hereinafter TEXAS COC&I). The TEXAS COC&I is the statewide organization for dozens of motorcycle clubs from across Texas, including military veteran's motorcycle clubs, foster children needs motorcycle clubs, and, yes, even Christian motorcycle clubs and recovering alcoholic motorcycle clubs. Each of the four Plaintiffs had attended numerous other TEXAS COC&I meetings covering such topics as safety, first aid, CPR, road-side assistance and staying safe on the road. They expected nothing different than any past meetings. None received any advance warning or notice that this meeting would likely turn out quite different.

31.    The Defendant Waco Police Department has publicly admitted that they received some sort of forewarning of the potential for trouble between two rival motorcycle clubs, the Bandidos and the Cossacks, as a result of a dispute over use of certain "rockers" attached to

their riding jackets. Allegedly, WPD was tipped that secretly members of the Cossacks were likely to attend this meeting on May 17th, 2015. It is understood that the Cossacks Club was not a member of the Texas CoC&I and not invited to this meeting and had engaged in past hostilities with members of the Bandido Club. WPD alleges to have requested Defendants Peaktastic Beverage, LLC d/b/a Twin Peaks Restaurant (hereinafter Peaktastic), Front Burner Restaurants GP LLC. (hereinafter Front Burner) and Twin Restaurant Investment Company LLC. (hereinafter TRIC), to cancel this meeting to avoid any potential conflict in the event members of the Cossack Club showed up. In fact, in a shocking revelation, it was stated in a post incident media briefing by WPD the following admission:    "We have attempted to work with the local management of Twin Peaks to no avail," Sergeant Swanton said.  "They have continued to allow these bikers to gather here, and this is the culmination of what has occurred. "What happened here today could have been avoided if we had had management at a local establishment listen to their police department and assist us.  They failed to do that." [1]

Clearly, assuming this request was made by WPD in some fashion in the days preceding the event, the Defendant restaurant chain failed to cancel the meeting or to provide the Texas Confederation Clubs & Independents (Texas CoC&I) and other motorcycle club attendee's with ANY warnings of the impending trouble/violence that was expected to occur. Nor does it appear that the Defendant WPD attempted to forewarn anyone else. Incredibly, WPD, with specific advance information that there was a possibility of violence at this meeting, did ABSOLUTELY NOTHING to protect any of the attendees. Despite knowing of an alleged possible conflict at Twin Peaks that day (ostensibly from an informant), instead of having a police presence onsite to discourage any trouble from starting, law enforcement set an empty police cruiser facing the patio of Twin Peaks and set the video to run so they could

---

[1] 9 killed, at least 170 arrested after Waco biker gang shootout, Matt Pierce and Molly Hennessy-Fiske, LA Times. May 18, 2015.

record what happened along with a "pole cam". They also had a very large police presence close by waiting for the trouble to start instead of preventing it. As one biker said in an interview with Nathaniel Penn of GQ magazine, "They were circling like buzzards on a dead deer," one biker told me. "I look at the people I was riding with, and I said, 'This doesn't look right.'" This motorcycle club member, John Wilson, went on to say "a Waco Spokesman was touting the quick 40 second response time of the police, when that was obviously false. '*They were here.*'"[2] The irony of the following statement from Waco police spokesman Sergeant Patrick Swanton was lost on him, "Police, anticipating problems, came to the bar in advance. 'We knew there would be trouble at this biker event,' Swanton said, adding, 'What happened here today could have been avoided."[3] So which is it? Did law enforcement "show up quickly" in response to an emergency, or where they already waiting in the wings with sniper rifles and suppressors (silencers). The evidence has clearly established the later.

While the incident could have been avoided, total blame by WPD on the restaurant is clearly misplaced. WPD had the last clear opportunity to change the course of history. WPD could have notified the meeting hosts in advance but made NO effort to do so. Not so much as a phone call in advance, nor any discussion with any of them that morning as they arrived and started setting up for the meeting. They did nothing to warn any attendees in advance, nor on the scene. They did nothing to attempt to diffuse a potential situation by checking any arrivals for guns, and doing what Waco has been known to do for almost 200 years, ask folks to "check their weapons". If they felt that any club members were likely to instigate an incident, they could have met with them separately in advance or on site. They could have had a strong show of force at the patio area where the meeting was to take place and the

---

[2] The Untold Story of the Texas Biker Gang Shoot-Out, by Nathaniel Penn, GQ Sept. 30 2015.
[3] 9 killed, at least 170 arrested after Waco biker gang shootout, Matt Pierce and Molly Hennessy-Fiske, LA Times May 18, 2015

attendees were congregating.   WPD did nothing to reduce the likelihood of a conflict, which suggests they preferred one.

It certainly could have been avoided but the law enforcement present did not want to avoid it, they wanted the trouble to happen regardless of the risk to hundreds of innocent patrons and employees of Twin Peaks.  It is clear at this point that WPD obtained the result they wanted. As a consequence,  hundreds of patrons, and employees, and other business invitees such as the Plaintiffs, were caught up in a horrific shootout where law enforcement and a few of the patrons engaged in a brutal gun fight, firing hundreds of bullets, killing 9 people and wounding at least 18 others.

32.      Plaintiffs are members of the Grim Guardian Motorcycle Club (GGMC).  While they have the typically fierce club name, forming a Club was never as much the goal as doing charitable work. They began as a Riding Club focused on Child Advocacy centered on kids in abusive situations and had already been introduced into the legal system. Sometimes it was kids in the care of CPS. Other times, it was kids living with court appointed family-member guardians. They worked primarily with CASA (Court Appointed Special Advocates) and CCP (the Center for Child Protection) for several years. These organizational relationships led to other opportunities for fundraising and logistical support with Texas and Travis County Child Protective Services (TCCPS). One of the most surprising elements of wearing their "cuts" around these advocacy folks is that they discovered that the rugged biker image was actually appreciated. GGMC members learned that male role models and volunteers are very scarce within the world of grass-root advocacy and mentoring. TCCPS was happy to see strong male role models and as a consequence, the bikers were in fairly high demand.

33.      In January of 2015, they became Grim Guardian MC.   Bonar Crump states, "One of the first questions I remember hearing from another MC guy one day once we formed our club was, "What exactly are you Guardians guarding?" It was a good question. It didn't take

us long to land on a mantra which we memorialize in the form of a patch we wear that says, "BFC." What we guard is BROTHERHOOD – FAMILY – COMMUNITY.  It's what had brought us together.  It's what had always kept us together.  It was what we were teaching our own children and passing along to the children, vets, and homeless that we had the opportunity to share time with."

It is this against this backdrop that four members of this club made the trek to Waco. They went there with the most altruistic of purposes and intentions. They were clueless of any feuds or of the trap being laid by others at Twin Peaks on that fateful day.  They are not, nor have they ever been involved in criminality and there is not a SHRED of evidence that any one of these Plaintiff's anticipated any problems, knew of any potential for bloodshed, nor participated in any manner in any of the violence that occurred there.

34.     One Grim Guardian arrested and charged in Waco for the Twin Peaks shootings, Plaintiff Jim Harris, is a young man close to completing his Master's Degree in Counseling, and currently counsels abused and neglected children and adults with a variety of mental health issues for an Austin non-profit.  He has a 4.0 G.P.A. and hopes to get his LPC licensure to practice therapy. Despite coming from a family in which both of his parents, and several aunts, uncles, and cousins were/are members of law enforcement in Houston/Harris County, Texas, he is very concerned he will not be able to even sit for the exam this Fall due to his arrest record and the fact that he has neither been indicted, nor no billed.  When a Grand Jury issues a "no bill" it means that there is no evidence, or insufficient evidence to take the case to the criminal court. The Plaintiffs are currently stuck in a criminal limbo that the Waco D.A., Defendant Abelino Reyna could end with a stroke of a pen by dismissing all charges against the Plaintiffs.  The fact that D.A. Reyna has not cut loose the un-indicted motorcycle club members (and most of the others indicted based on blank arrest warrants), who he has not a shred of evidence of culpability for anything, has only adding to the harm

he and the other defendants have already intentionally caused for these innocent Americans!

35.     As an example of the continuing harm suffered by our clients, Jim Harris is friends with and has worked with Hunter Doherty, "Patch Adams", a famous doctor known for his method of using humor and medicine. He was made famous by the Movie, "Patch Adams" and played by Robin Williams.  Dressing as clowns and traveling the world, providing free of charge, their unique combination of medicine and humor.  As part of that, Jim Harris recently traveled to Mexico City to again be a volunteer counselor/clown with Patch Adams and other volunteers for Doctors Without Borders, which works with poor children desperate for  help. Sadly, this time he was taken aside by the Mexican authorities and interrogated for hours at the airport regarding his arrest in Waco, then put on the next flight to the United States, which happened to export him all the way to Seattle, where he then had to plan and pay for a hotel, and then the long sojourn home at his own expense.

36.     Plaintiffs did not engage in any criminal activity while at Twin Peaks on that day, nor did they travel to Twin Peaks on that day with the intent to engage in any criminal activity nor did they anticipate that any criminal activity would take place.

37.     Plaintiffs have no criminal records other than one Plaintiff with a DWI many years before, and are recreational motorcyclists.

38.     Plaintiffs were still seated on, and in the process of parking their motorcycles, having just arrived to Twin Peaks on the day of the incident at the exact moment the shooting started.

39.     At the time the violence erupted, Plaintiffs Jim Albert Harris, Drew King and Juan Carlos Garcia took cover behind their motorcycles, then a truck which was struck by bullets while they hid behind it.  The three of them, Jim Albert Harris, Drew King, and Juan Carlos Garcia, slowly worked their way back out of the parking lot by going from car-to-car while dodging bullets.  At one point, they took cover behind a vehicle with a female law-enforcement officer.  She quickly determined that these three men were not a threat.  As they

hid together behind a vehicle, these three heard over her radio that she was ordered to advance toward Don Carlos restaurant. She cursed and was visibly afraid. Drew King and Juan Carlos Garcia both told her to take care of herself and to be careful. These three guys worked their way out of the parking lot of Twin Peaks and kept their distance from the scene. Police put up crime scene tape around the restaurant after the shooting stopped. Jim Albert Harris, Drew King, and Juan Carlos Garcia searched just outside the crime scene for their friend, Bonar Crump Jr., afraid he may have been hurt or killed. They asked a police officer if they could get their motorcycles and were told no, they would need to get a ride home. Jim Albert Harris, Drew King, and Juan Carlos Garcia then waited in the parking lot for approximately three 3-4 hours for Bonar to be released so that they all could go back home to Austin, Texas.

40.    With their motorcycles being impounded, they sat under a tree in the parking lot waiting for a ride to pick them up from Austin. Before their ride could arrive, a group of officers with drawn assault rifles approached Jim Albert Harris, Drew King, and Juan Carlos Garcia and told them they were to be searched. Drew King asked why and was told by one officer, "Because you are wearing leather vests." Not long after they were searched, Defendant Patrick Swanton approached, looking at their small pocket knives and wallet chains, pointing to each item and repeatedly shouting "That's illegal" over and over again. He then said "You are all under arrest." "You are all going to fucking jail!" None of the items seized were, in fact, illegal.

41.    Defendant Sergeant Swanton later gave an interview where he deliberately lied to the media about these three Plaintiffs. "The police detained numerous people involved in the fight," Sergeant Swanton said, "and arrested three bikers who were carrying weapons and tried to reach the scene after the fighting had quieted down."[4]

---

[4] 9 Are Killed in Biker Gang Shootout in Waco, by Manny Fernandez, Liam Stack, and Alan Blinder, NY

Defendant Swanton tried to portray these three Plaintiffs as bikers arriving with weapons as reinforcements when, in fact, they were present when they were arrested sitting in the parking lot. Where were their motorcycles, Sergeant Swanton? They were inside the yellow police tape. He knew they had not arrived after the shootings. As for these "weapons" they were bringing as reinforcements, some "weapons", a few small pocket knives and wallets connected to small chains to keep them from falling out of back pockets on a motorcycle.

42.     Fortunately for three of your plaintiffs, they were distant enough at the time shooting broke out to seek cover away from the restaurant. Unfortunately, Bonar Crump Jr. the President of Grim Guardian MC, got off his motorcycle and took refuge behind a car in the Don Carlos parking lot, getting separated from his other club members. After dodging bullets for several minutes, the shooting died down and the police moved in. Bonar peaceably surrendered to the law enforcement officers. While sitting in handcuffs, which were soon to be replaced by a zip tie, he was told he would be released as soon as officers could take a statement from him. Little did Bonar know that he would spend 14 hours in those same too tight zip ties with his arms pulled painfully behind his back. Despite what he was told, Bonar Crump Jr. was transported with the rest of the bikers to the convention center. Though he wasn't told until much later, Defendant D.A. Reyna had already ordered his arrest based primarily on false and misleading information and advice provided by Defendants Robert Lanning, Jeffery Rogers, Steven Schwartz, and Christopher Frost. Bonar, like all the other attendees except his three club members, received the same bail, a staggering **ONE MILLION ($1,000,000.00) DOLLARS**.

43.     Defendants Reyna, Stroman, Lanning, Rogers, Schwartz, Frost, and Swanton decided to arrest all attendees that were either wearing leather jackets (colors) and/or arrived via a motorcycle. They assumed all were criminals without any evidence or information. They

believed that because these bikers were getting together it had to be for a criminal purpose. They were lazy and sloppy in that they did no investigation to determine what was really happening, who did what, and just generalized that these bikers must all be bad and culpable of something without any facts to support their decision. Any facts contrary to their preconceived notions were discarded automatically.

44.     Defendant Rogers is a Waco police detective assigned to work on "Gangs." DPS officers Schwartz and Frost, in conjunction with Rogers provided the false and misleading information that Plaintiffs and all of the rest of the bikers and their various clubs were affiliated with criminal motorcycle gangs. This information formed the basis of the decision to arrest everyone in a jacket or with a motorcycle. The cavalier and lazy attitude of the law enforcement present at Twin Peaks on May 17, 2015, as well as their own prejudices against anyone riding in a motorcycle club were the reasons this tragedy happened at all. Profiling motorcyclists and arresting them all with no ***particularized showing of facts against each Grim Guardian*** to demonstrate probable cause to arrest Plaintiffs and the vast majority of the motorcyclists present that day, is not only lazy investigative work, it violated the law and the Constitution they all have sworn to uphold and protect. The hubris to think that they can do whatever they want has resulted in the terrible mess that we have today!

45.     Because they were "under arrest" much earlier, but not taken away until after the other motorcycle club members, Jim Harris, Drew King, and Juan Carlos Garcia were transported to McLennan County jail and initially received much lower bonds than the rest. The first bond for Jim Albert Harris was set at $20,000. Drew King and Juan Carlos Garcia had their bonds set initially at $50,000 due to, as they were told, their wallet chains being too thick and thus considered weapons.

46.     While in jail after their arrest, Jim Albert Harris, Drew King and Juan Carlos Garcia were never read their rights, not allowed to make a call, and placed in a filthy cell for the

night.  The next day Drew King's brother-in-law found out what happened to the Plaintiffs and located them.  He, Jennifer Garcia, and another friend made arrangements with a bail bondsman to pay their bail, subsequently bonding them out and going home to Austin.  Soon thereafter, Jim Albert Harris, Drew King, and Juan Carlos Garcia received a call from their bondsman informing them that he had seen a news interview of Waco District Court Judge, who indicated in an interview, that they had made a mistake on Jim Albert Harris, Drew King, and Juan Carlos Garcia's bond amounts.  Other news reports went out nationally stating that Jim Albert Harris, Drew King, and Juan Carlos Garcia were accidently set free and were on the loose, armed, and dangerous!  Warrants for their arrest were issued and law enforcement visited the employers and homes of all three men in force and stating to Plaintiff's co-workers that the men were armed and dangerous.  These three "armed and dangerous fugitives" soon discovered the new bond amounts were increased to **TWO MILLION ($2,000,000.00) DOLLARS** each. This is after they legally had bonded out, not broken the rules, and turned themselves in voluntarily. Their bonds were twice what all of the other arrested bikers received even though they had not broken any laws, merely chose to ride a motorcycle as a member of a small club of people who liked to hang out with each other and give back to the most vulnerable of our society.

47.     Upon returning to Waco in custody being transported from Austin to Waco by **six Travis County SWAT officers while their arms and legs were in shackles,** Jim Harris, Drew King and Carlos Garcia were first placed in the McLennan County jail until that evening and then they were transferred to the Jack Harwell Detention Center.  There they were locked in a medical office treatment room.  No one came by for over 24 hours, no food, no drink, except out of the sink.  Only after banging and yelling for hours did someone finally come for them.  They were told that they had forgotten the Plaintiffs were locked up in there.

48.     Plaintiffs did not engage in any violence at or around Twin Peaks, did not pull out or

attempt to use any alleged weapon at any time, did not threaten anyone else, and turned themselves peaceably to law enforcement representatives.

49.     Plaintiffs did not encourage nor solicit any criminal activity at Twin Peaks that day.

50.     Plaintiffs did not posses any illegal weapons while present at Twin Peaks that day, except for the outrageous allegations that the wallet chains worn by Drew King and Juan Carlos Garcia were weapons, out of a dubious fear that someone could be beaten with a wallet.

51.     Despite the fact the Plaintiffs committed no criminal acts, they were arrested at Twin Peaks on or about May 17, 2015, without probable cause, and their motorcycles were illegally seized and damaged.   Law enforcement also called the lien holders on the motorcycles and told them to come get their property, even though no payments were missed. This was clearly another extension of malicious conduct on the part of elements of local law enforcement.

52.     Defendant Reyna and John Does were present at the Twin Peaks on or about May 17, 2015, and acting under color of law, were providing advice to Chavez, Waco Police Department, and the McClennan County Sheriff's Department, regarding whether there was probable cause for the wholesale arrest of 177 people, including Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King, and whether there was a legal basis to seized numerous motorcycles, including ones owned by Plaintiffs.  Defendant Reyna ordered that all persons with motorcycles and/or wearing leather "cuts" (vests) be arrested and charged with engaging in organized criminal activity.

53.     On or about May 18, 2015, Defendant  Chavez, Waco Police Department John Does and McLennan County John Does, drafted a criminal complaint (the "criminal complaint") against Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King and presented it to the Defendant Justice of the Peace, Walter H. "Pete" Peterson

("Peterson").

54.     The criminal complaint alleges that Plaintiff Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King committed the first degree felony offense of engaging in organized crime.

55.     It is believed that Peterson was chosen by Chavez and D.A., because he is a former Texas Department of Public Safety Trooper with no formal legal training.  Clint Broden, attorney for one of the bikers arrested stated, "It is our belief that law enforcement chose Peterson to set the bonds in this case because of his lack of legal training and his willingness to ignore the requirements that each case be given individual consideration," Broden later filed a complaint against Defendant Judge "Pete" Peterson, the basis of which were, "...comments Peterson made to the Tribune-Herald, including, 'I think it is important to send a message.  We had nine people killed in our community.  These people just came in, and most of them were from out of town.  Very few of them were from in town." [5]

56.     Upon information and belief, the identical criminal complaint used in Plaintiffs, Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King's cases were used to justify the arrest of more than 173 other individuals, and only the names were changed in the various criminal complaints.

57.     The complaint alleges absolutely no individualized probable cause to establish that Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King engaged in organized crime.  How could it when the facts are the Plaintiffs traveled to a meeting, were still on their motorcycles when the trouble began, fled for their lives from the shooting, and cooperated 100% with the demands of law enforcement? When there was ZERO evidence ascertained at that time, or any time since, that any of the Plaintiffs have engaged in any active or passive illegal conduct of any manner, whether it be amongst other club members or

---

[5] Dallas lawyer files complaint against JP Peterson over biker bonds, by Tommy Witherspoon, Waco Tribune-Herald, June 2, 2015.

anyone else.

58.     Moreover, defendants Chavez, Abelino D.A. Reyna, and/or John Does, failed to inform Justice of the Peace "Pete" Peterson that Plaintiffs, Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King, were not members of the Cossacks, nor the Bandidos, the two clubs alleged by law enforcement to be the "gangs" behind the violence, and that they did not participate in any of the violence occurring at Twin Peaks, but instead hid from the violence.

59.     Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King were arrested simply for being present at what turned out to be a crime scene, wearing a motorcycle vest and riding a motorcycle to legislative update meeting.

60.     On or about May 20, 2015, Reyna gave an interview to KWTX News in which he stated that Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King and the others arrested on or about May 17, 2015, were guilty simply because they allegedly did not come to law enforcement to cooperate in order to "ensure that justice was done" and they did not "act like victim[s]." Reyna made this statement knowing that Plaintiffs had indicated a willingness to give statements, and in fact did so. Reyna also stated during the interview that police had probable cause to arrest Plaintiffs, Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King on May 17, 2015, and, based on what was known at the scene of the Twin Peaks incident, Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King, and the others were guilty of criminal offenses when, in fact, he knew or should have known that Plaintiffs were completely innocent. Bonar Crump Jr., was the only one of the four to be interviewed at the convention center, the other three were willing, just not asked.

**FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 – FOURTH AMENDMENT PURSUANT TO MALLEY V. BRIGGS STROMAN, CHAVEZ, REYNA, LANNING, WALTER H. "PETE" PETERSON, AND JOHN DOES**

61.    Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-54 of their Complaint as if fully set forth herein and made a part hereof.

62.    At the time of Plaintiffs arrest, the Fourth Amendment of the United States Constitution required probable cause to arrest a citizen before the citizen's liberty could be significantly retrained.  As a direct result of Defendant's conduct, Plaintiffs were falsely arrested and charged with Engaging in Organized Crime, despite a complete lack of probable cause to establish that the Complainants had committed a crime.  The normal checks and balances in place to prevent a false arrest were ignored in favor of doing what was necessary to accomplish what the Defendants, Reyna, Stroman, Chavez, Lanning and other John Doe officers and attorneys wanted as their end result, lock them all up and send a message not to come to Waco!  The Defendant's conduct, as described above, deprived Plaintiffs of their right to be secure in the persons against unreasonable search and seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.  The Fourth Amendment of the U.S. Constitution states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, **and no warrants shall issue, but upon probable cause**, supported by oath or affirmation, and **particularly describing** the place to be searched, and the persons or things to be seized." (*Emphasis added.*) [6]

63.    Chavez, Stroman, Lanning and Reyna drafted the probable cause affidavits and presented them to Justice of Peace Peterson when no reasonably competent police officer in Chavez's position could have concluded that a warrant should be issued against Plaintiffs

---

[6] Dallas lawyer files complaint against JP Peterson over biker bonds, by Tommy Witherspoon, Waco Tribune-Herald, June 2, 2015.

based on the allegations against them in the "fill in the name" criminal complaints. These Defendants **KNEW** that these affidavits were false, and misleading, there was no mistake. They had ample video evidence to support Plaintiffs were innocent of any wrongdoing as well as the lack of criminal records of the Plaintiffs.

64.     In addition, Chavez, and Waco Police Department John Does and McLennan County John Does, intentionally withheld material information regarding Plaintiffs in the criminal complaint such as the facts that neither were members of the Cossacks, nor the Bandidos, that they did not participate in any of the violence occurring at Twin Peaks and, in fact, hid from the violence, and that they were innocent.

65.     Waco Police Department John Does and the McLennan County John Does illegally seized Plaintiffs' motorcycles.

66.     During the times mentioned herein, Reyna was providing Chavez, and John Does legal advice related to, *inter. alia.,* of the "fill in the name" criminal complaint, the existence of probable cause to arrest Plaintiffs and seize their motorcycles.

67.     As a direct proximate result of the above-described actions of Defendants Chavez, Renya, and John Does, Plaintiffs were deprived of their rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

68.     As a direct and proximate result of the above-described actions of Defendants Chavez, Reyna, and the John Does, Plaintiffs suffered economic, physical and mental damages.

### SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 – Fifth Amendment

### ABELINO REYNA

69.     Plaintiffs, Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-62 of this Complaint as if fully set forth herein and made a part hereof.

70.     At the time of Plaintiffs' arrest on May 17, 2015, the Fifth Amendment of the United States Constitution provided that a person charged with a criminal offense could remain silent.

71.     Knowing that Plaintiff Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King had rights under the Fifth Amendment to the United States Constitution to remain silent, Reyna gave a television interview implying that Jim Albert Harris, Bonar Crump Jr. Juan Carlos Garcia, and Drew King were guilty and not truly "victims" simply because they did not come to law enforcement to cooperate in order to "ensure that justice was done" and they did not "act like a victim." [7]

72.     Likewise, Reyna made these statements knowing of the holding by the United States Supreme Court in _Doyle v. Ohio,_ 426 U.S. 610 (1976) where the state attempted to impeach defendant's trial testimony by asking why the defendants did not tell the police officers during their arrest and questioning after being Mirandized, the information they testified to at trial.  The Supreme Court stated that the, "Use of the defendant's post-arrest silence in this manner violates due process." [8]

73.     Reyna made the statements to KWTX in order to prejudice the Plaintiffs and to justify Plaintiffs continued arrest and imprisonment.  Plaintiffs had answered all questions asked by law enforcement and cooperated fully with their every instruction.

74.     As a direct proximate result of the above-described actions of Defendant Reyna, Plaintiffs were deprived of their rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

75.     As a direct proximate result of the above-described actions of Defendant Reyna, Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King suffered damages.

---

[7] 426 U.S. 610, 96 S, Ct. 2240, 49 L. Ed. 2nd 91 (1976).
[8] 426 U.S. 610, 96 S, Ct. 2240, 49 L. Ed. 2nd 91 (1976).

## THIRD CAUSE OF ACTION – 42 U.S.C. § 1983

### CITY OF WACO AND MCLENNAN COUNTY

76.     Plaintiffs, Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-69 of their Complaint as if fully set forth herein and made a part hereof.

77.     The City of Waco is the final policymaker for the Waco Police Department's policies, customs, and practices and had actual or constructive notice of the inadequate supervision and training of Defendants Judge "Pete" Peterson, Sergeant Patrick Swanton, and Chavez, which, in reasonable probability, caused the incidents that form the basis of this Complaint.

78.     It was the policy of the City of Waco, as decided and approved by their policymakers, to cause the arrest and detention of numerous individuals belongs to motorcycle clubs who were in or around the Twin Peaks restaurant at the time of the incident, regardless of whether or not there was individualized probable cause to arrest and detain a particular individual and to do so based on "fill in the name" complaints without individualized facts.  This policy was carried out repeatedly, and as a result, over 177 people were arrested and detained, with 174 of those persons given the identical **ONE $1,000,000 MILLION DOLLAR BOND**, and three (3) given a **TWO $2,000,000 MILLION DOLLAR BOND**, with no regard to their individual situation.

79.     The County of McLennan is the final policymaker for the McLennan County Sheriff Department's and the McLennan County District Attorney's Office's policies, customs, and practices and have actual or constructive notice of the inadequate supervision and training of Reyna and John Does which, in reasonable probability, caused the incidents that form the basis of this Complaint.

80.     It was the policy of the County of McLennan, as decided and approved by their policymakers, to cause the arrest and detention of all individuals belonging to motorcycle

clubs who were in or around the Twin Peaks restaurant at the time of the incident, regardless of whether or not there was individualized probable cause to arrest and detain a particular individual and to do so based on "fill in the name" complaints without individualized facts. This policy was carried out repeatedly, and as a result, over 177 people were arrested and detained, with 174 of those persons given the identical **ONE $1,000,000 MILLION DOLLAR BOND**, and three (3) given a **TWO $2,000,000 MILLION DOLLAR BOND** with regard to their individual situation.

81.     The failure to train and supervise, Chavez and John Does by the City of Waco/or the decisions of its policymakers to arrest numerous individuals without individualized probable cause and to seize vehicles was a direct cause of the incidents that form the basis of this Complaint.

82.     The failure to train and supervise Reyna, John Does by the County of McLennan and/or the decisions of its policymakers to arrest numerous individuals without individualized probable cause and to seize vehicles was a direct cause of the incidents that form the basis of this Complaint.

83.     Defendants Chavez, D.A. Reyna, and John Does, intentionally caused Plaintiffs to be deprived of their rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION – 42 USC § 1983 – EIGHTH AMENDMENT EXCESSIVE BAIL

### REYNA, CITY OF WACO, COUNTY OF MCLENNAN, WALTER H. "PETE" PETERSON

84. Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-77 of their Complaint as if fully set forth herein and made a part hereof.

85.     The Eighth Amendment to the U.S. Constitution was adopted as part of the Bill of

Rights in 1791. "Traditional right to bail before conviction permits unhampered preparation of defense, and serves to prevent infliction of punishment prior to conviction, and unless this right is preserved presumption of innocence would lose its meaning; practice of requiring bail bond or deposit of sum of money subject to forfeiture serves as additional assurance of presence of accused and bail set at higher figure than amount reasonably calculated to fulfill this purpose is "excessive" under Eight Amendment." [9]    174 of the bikers arrested had bail set unreasonably high at **ONE $1,000,000.00  MILLION DOLLARS**, including Plaintiff, Bonar Crump Jr.  Because a much lower and more reasonable bail had initially been set for the three Plaintiffs arrested before the others, those three, Jim Albert Harris, Drew King, and Juan Carlos Garcia were able to bond out of jail quickly and return to Austin.  Justice of the Peace, "Pete" Peterson stated in an interview that $1 million dollar bonds were set because, ***"I think it is important to send a message.  We had nine people killed in our community. These people just came in, and most of them are from out of town.  Very few were from in town."***[10]    This statement is clearly out of line with merely assuring the presence of the accused at trial and demonstrates just how uninformed and unqualified Justice Pete Peterson was.  It is clear that he meant to punish and make an example out of the Plaintiffs.  He has no prior legal training other than having been an officer with the Texas Department of Public Safety and was the perfect patsy to get to sign off on the stack of blank, cookie cutter probable cause affidavits signed by Defendant, Detective Chavez.  He should have known this was wrong just as Defendant, Officer Chavez knew it was wrong for him to swear affidavits against Plaintiffs that he had no personal knowledge of.  Apparently, they felt the ends justify the means! They made everything up that they needed in order to achieve the result they wanted, as opposed to what the law requires.

86.      Despite legally bonding out of jail, State District Judge's Matt Johnson and Ralph

---

[9] Stack v Boyle (1951) 342 US 1, 72 S Ct 1, 96 L Ed 3 Superseded by stated in 322 F. Supp. 2nd 1045 p. 1054. 986

[10] The Untold Story of the Texas Biker Gang Shoot-Out, by Nathaniel Penn, GQ Sept. 30 2015.

Strother claimed that it was a mistake to release Jim Albert Harris, Drew King, and Juan Carlos Garcia under the lower bail bonds and they issued arrest warrants for the three plaintiffs who had already legally bonded out of jail and were not in violation of any of the conditions of their bonds.  The media were told they were "armed and dangerous".  Even though they complied with all of their bond requirements and turned themselves in once they discovered there was a new warrant for their arrest, District Judge Ralph Strother set their new bail at $2,000,000.00 (TWO MILLION DOLLARS).  This goes way over and above assuring the presence of the accused at trial, especially since the three turned themselves in voluntarily while under much lower bond amounts. What reason could Judge Strother possibly have to double the already extreme bond of **$1,000,000.00 (ONE MILLION DOLLARS)** the other bikers received as bonds, as "a message", to double that figure for three bikers who complied with everything and even turned themselves in?  The three bikers had already demonstrated their willingness to appear by turning themselves in, three bikers who had done nothing wrong in the first place. Once again bail was being used against Plaintiffs as a punishment rather than to secure appearance!

87.     While Stack v. Boyle states that:

   *"The proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the court of appeals from an order denying such motion."[11]*
In the instant case this remedy proved to be grossly inadequate and caused more harm to the Plaintiffs.  While the Plaintiffs were locked up and subject to the excessive **$1,000,000.00** and TW0 **$2,000,000.00 (TWO MILLION DOLLAR** bond amounts), Defendants Jim Swanton and Abel Reyna gave several media interviews intentionally falsifying the facts surrounding the incident at Twin Peaks to the Plaintiff's detriment. "Sergeant Jim Swanton, the Waco Police Department's affably officious spokesman, gave seven press conferences in

---

[11] The Untold Story of the Texas Biker Gang Shoot-Out, by Nathaniel Peen, GQ Sept. 30 2015.

the first three days after the shootings.  He became a minor media celebrity." writer Nathaniel

Penn with GQ wrote, "With so little evidence available to the public, Swanton had complete

control of the narrative, and he took the opportunity to declare, repeatedly, that the TEXAS

COC&I meeting at Twin Peaks had been a criminal gathering and that every biker who

attended was a gang member".  When a reporter observed that many bikers had disputed

these claims, Swanton was dismissive.  "They lied," he said." "By his final press conference,

Swanton seemed to be struggling to defend his earlier characterizations of the clubs.  A

reporter asked, 'Can you please respond to criticism…that not all 170 [jailed bikers] are

criminals, that a lot of [them] are totally innocent and had nothing to do with the shooting?'

'No I can't respond to that,' Swanton shot back, then hastily moved on.[12]

88.     Before allowing Plaintiffs the opportunity to have their excessive bonds reduced

through the proper procedure, the Defendant District Attorney, Abel Reyna, moved the court

to install a Gag Order preventing any further discussion of what happened.  By the time the

Plaintiffs were able to get their bonds reduced, get out of jail, and attempt to controvert the

Defendant's lies, the Gag Order was in place and the false narrative painting Plaintiffs as

murderous gang members could not be controverted.  **The "proper procedure" or remedy**

**for excessive bail is wholly inadequate for Plaintiffs'** who were victimized and denied their

First Amendment right to speak out against the deliberate lies of the State and various state

actors!  It was too late to make a difference by the time the Tenth Court of Appeals threw out

the gag order to change public opinions on what really happened, but it was some measure of

vindication in hearing that, "The intermediate appellate court held that the 54th State District

Judge Matt Johnson abused his discretion when he limited pretrial publicity in Clendennen's

case before the court issued a gag order on June 30, 2015, which remained in effect until

---

[12] The Untold Story of the Texas Biker Gang Shoot-Out, by Nathaniel Peen, GQ Sept. 30 2015.

Wednesday."[13]   Ironically, Defendant Swanton felt the same way when he said, "At this point, (the lifting of the gag order) doesn't really change anything for us, **because there is not much more we could put out there at this point,"** Swanton said, "Certainly we would not do anything to hinder the prosecution of this case, **but I don't know what else we could put out there.** (*emphasis added*)[14]

89.     Due to the excessively high bail, Plaintiffs had to remain in jail until bail was lowered to a more reasonable amount.  The excessive bail resulted in higher legal retainers for their criminal defense. The resulting financial strain is just another thing to pile on top of punishment, meted out by law enforcement and the court system over and above what would normally be expected under the circumstances.  The stigma of having a ONE and **TWO MILLION DOLLAR BAIL** continues to haunt Plaintiffs and cause harm in numerous untold ways.

## FIFTH CAUSE OF ACTION VIOLATIONS OF R.I.C.O. RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S. CODE § 1961 -1968 MCLEANNAN COUNTY, CITY OF WACO, BRENT STROMAN, MANUEL CHAVEZ, ABELINO REYNA, WALTER H. "PETE" PETERSON

90.     Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-83 of their Complaint as if fully set forth herein and made a part hereof.

Plaintiffs would show that these state actor defendants conspired in multiple different manners together to damage plaintiffs, falsely arrest plaintiffs, falsely detain plaintiffs, deprive them of their constitutional rights, falsely charge plaintiffs, defame, slander and libel plaintiffs, and cause negligent, grossly negligent and intentional acts of malfeasance upon Plaintiffs. This included conspiracies to destroy their character, to take their possessions

---

[13] Court of Criminal Appeals lifts Twin Peaks gag order, by Kristin Hoppa, Waco Tribune-Herald June 15, 2016
[14] Court of Criminal Appeals lifts Twin Peaks gag order, by Kristin Hoppa, Waco Tribune-Herald June 15, 2016

without due process of law, to arrest and detain them without due process of law, to post national "warnings" that these men were armed and dangerous, when they knew in fact they were not armed or dangerous. That they deliberately tortuously interfered with their jobs, their employers and their families to inject the most harm possible without ANY provocation or reason, other than their own narrow-minded perceptions and disdain for people who choose to ride motorcycles.

91.    Each of the Plaintiffs were proximately injured in their business and property rights by reason of one or more violations of RICO's substantive provisions. The conduct of Defendant Law Enforcement demonstrates a pattern of illegal conduct. The vast majority of the arrests in this matter were fraudulent and all of them were fraudulent as they related to Plaintiffs. The exercise of jurisdiction over the Plaintiff to subsequently extort monies for bail bonds, local and necessary criminal counsel, threats of fines and penalties, and even the incarceration benefiting a PRIVATE jail system in which the local judiciary maintains a role on the board are violative of the provisions of the RICO statute.

92.    The conspiracy among Defendants to falsely arrest and charge almost 200 patrons to a regularly scheduled legislative meeting involving dozens of individual motorcycle clubs was done for the benefit of Defendants, personally and professionally, and at great cost to the Plaintiffs.    It was done with pre-planning among the Defendants, and orchestrated in a manner to insure that an altercation broke out at the premises, possibly even instigated BY law enforcement, and that subsequent arrests would be had of every person there. "On Sunday, at least 12 Waco police officers, as well as officers with the state's top law enforcement agency, the Texas Department of Public Safety, worked to secure the area before the shootout started because officials "expected issues," Sergeant Swanton said."[15] They had the time to prepare for the expected trouble, they could have prepared by having a

---

[15] 9 killed, at least 170 arrested after Waco biker gang shootout, by Matt Pierce and Molly Hennessy-Fiske, LA Times May 18

show of force present to defuse the situation, or do what they actually chose to do, ambush them!  According to the LA Times, "McLennan County Sheriff Parnell McNamara said, "We knew that there was trouble brewing between the Bandidos and the Cossacks, but we didn't know it would be a shootout."[16]

93. They wanted a gunfight with the bikers that came to Twin Peaks that fateful day.  As a local blogger, the WacoExtremist.com stated in his article titled **Requiem for Twin Peaks,** "Why weren't uniforms in the parking lot?"... "Oh, just a minute, there **were** officers in the lot.  Twenty–two, to be exact, and many of those were SWAT.  Why didn't they move immediately to stop the shoving/fist fight?  Why did they wait until shots were fired to get involved, and that 'squad of weapons' a term well-known to ex-military; it means automatic weapons." [17]

94.   Video reflects a still unidentified man at the entrance to Don Carlos, an adjacent restaurant, who is looking towards the Twin Peaks restaurant directly across the parking lot.  At one point he checks to his right for approximately 3-4 seconds, then his left for 3-4 seconds, then he faces forward and taps his head rapidly three times with his right hand in quick succession as if to signal the dozen or more officers they had hidden in their unmarked vehicles surrounding the restaurant on the patio side.  In less than one second after the signal you can see all Hell breaking loose with people running for their lives and immediately run for cover as shots begin to ring out.

95.   Of course Defendants Swanton and D.A. Reyna wanted to paint the picture that officers fired in self defense and that most of the shots and most of the dead and wounded were shot by the bikers themselves.  "As they came up to the scene they were taking rounds

---

[16] 9 killed, at least 170 arrested after Waco biker gang shootout, by Matt Pierce and Molly Hennessy-Fiske, LA Times May
[17] The wacoextremist.wordpress.com.

and had to defend themselves, Swanton said of the officers who fired." [18] How very convenient considering the officers were already hidden in place in their vehicles and in the bushes.

"According to Waco police chief Brent Stroman, only three of his 16 officers discharged their weapons, firing a total of 12 rounds,  But eyewitnesses dispute that figure, as does the owner of the adjacent Don Carlos restaurant, who has claimed that 'thousands of bullet rounds' were fired." [19]

"'Harried handgun fights are usually a pretty inaccurate situation,' says motorcycle club member John Wilson. 'Head shots happen by mistake, if at all.  Someone got lucky.  To have that many guys hit with torso shots and head shots-in my experience, I would say that indicates you had trained people with long rifles and optical sights.  That's accurate, aimed fire.'" "A rival Bandido, who declined to be named, reached the same conclusion: 'Seven of the nine [dead] were head shots or chest shots.  Who trains for that?  Who?" [20]

96.     With the admitted pre-planning by law enforcement agencies, meetings in advance with the premises owner, setting up cameras in advance, staging law enforcement snipers armed with .223 sniper rifles WITH silencers or suppressors, preparing a stack of 200 probable cause affidavits, having a staged press conference thereafter, clearing out the jail capacity,  having the local Justice of the Peace stick everyone with million dollar bonds and then have the local judge issue a gag order so none of the Defendants or their counsel could publicly respond, this tragedy REEKS of a set up. If the Defendants didn't want anything to happen, they could have told someone, ANYONE, other than the restaurant owner who wanted to profit from the meeting. They could have had a show of force on the premises and demanded that no one enter the premises with any weapons. The prophylactic measures were

---

[18] 9 killed, at least 170 arrested after Waco biker gang shootout, by Matt Pierce and Molly Hennessy-Fiske, LA Times May 18,
[19] The Untold Story of the Texas Biker Gang Shoot-Out, by Nathaniel Penn, GQ Sept. 30 2015
[20] The Untold Story of the Texas Biker Gang Shoot-Out, by Nathaniel Penn, GQ Sept. 30 2015

innumerable, but oddly, very oddly, not a SINGLE ONE was utilized.  Any person with any common sense would ask a simple question: Why not?

97.    The Defendants took the Plaintiff's vests (cuts), cell phones, motorcycles, and other personal property.  They extorted the bail money from the false arrests, working together to make it all stick! A nice cottage industry for the locals if nothing else.

### COMMON LAW CAUSES OF ACTION

#### 1.  Premises negligence/premises security

### PEAKTASTIC BEVERAGE, LLC d/b/a TWIN PEAKS RESTAURANT,  FRONT BURNER RESTAURANTS GP LLC, and TWIN RESTAURANT INVESTMENT COMPANY, LLC.

98.    Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-91 of their Complaint as if fully set forth herein and made a part hereof.

Plaintiffs would show that each of the above restaurant defendants acted in a manner that they knew, or in the exercise of reasonable prudence, should have known, that their conduct in addressing, or failing to address, the potential for harm at the Twin Peaks on May 17, 2015, would result in patrons and others, including employees, to possibly sustain injury of even death, and yet failed to provide to any of the Plaintiffs nor to others any reasonable notice.  Not only did the Defendants fail miserably in any efforts to forewarn Plaintiffs or others, undertake any remedial measures, nor act in a reasonably prudent manner at the time of the incident, the injuries and damages were compounded by the conduct arising thereafter.

99.    Defendants, both the restaurant franchisor and franchisee, wholly failed to take ANY remedial measures nor provide ANY additional levels of security or forewarning, after they themselves were purportedly advised well in advance by WPD of the potential for violence at this event.  "We have attempted to work with the local management of Twin Peaks to no

avail," Sergeant Swanton said. "They have continued to allow these bikers to gather here, and this is the culmination of what has occurred." He added: "What happened here today could have been avoided if we had had management at a local establishment listen to their police department and assist us. They failed to do that."[21] Defendant restaurants were operating for profit, advertised to the public and specifically to the biking community. They apparently made a conscious decision in spite of some level of forewarning to continue to host this event and invite all of the patrons to their facility for sole express purpose of making a financial profit from them. They did not mention any discussions with law enforcement in advance of the event, even though they had the contact information from the TEXAS COC&I representatives who had booked the facility. They failed to post any warnings or communicate any warnings to Plaintiffs nor to any other patrons or even their own employees. They failed to advise that other Defendants had set up surveillance cameras at their facility for the express purpose of surreptitiously monitoring the event. They failed to provide any additional levels of added security or provide any advance verbal or written warnings to any of the attendees or even their own employees. These failings all contributed to the damages sustained by the plaintiffs. A premises owner owes a duty to provide business invitees and other guests with a highest degree of care and safety. While defendants may claim that hosting such an event in and of itself did not support any reason for a heightened level of protection, if it is in fact true that WPD or other parties forewarned Defendant Restaurant franchisor and franchisee and NO remedial action was undertaken, these defendants wholly failed in their legal obligations to Plaintiffs. Had discussions with the TEXAS COC&I taken place in advance, it is likely NONE of this would have occurred in the first place. If tempers were in fact flaring with one or more members of two separate motorcycle clubs in advance of this meeting, there were many, many things that could have

---

[21] 9 Are Killed in Biker Gang Shootout in Waco, by Manny Fernandez, Liam Stack, and Alan Blinder, NY Times, May 17, 2015.

been done to diffuse it. Yet these Defendants were more concerned about making a few dollars off each attendee selling hamburgers and beers than they were for their safety. As a consequence, ALL restaurant Defendants are liability to all Plaintiffs for all of their damages. In addition, with specific forewarning being given to Defendant restaurant chain, and the Defendant wholly failing to act, these Defendants should be held accountable for all actual damages incurred by Plaintiffs and should likewise by subject to punitive damages. Their conduct was even deemed sufficiently egregious by the ownership of the Defendant chain that the franchise rights of the local Twin Peaks were IMMEDIATELY terminated by the ownership shortly after the incident unfolded. Too little, too late.

### 2.    Libel and Slander

**PATRICK SWANTON, BRENT STROMAN, CITY OF WACO, ABELINO REYNA.**

100.    Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-93 of their Complaint as if fully set forth herein and made a part hereof.

Defendants Jim Swanton, the City of Waco, and D.A. Abel Reyna, have libeled, slandered and committed defamation of character and Intentional Infliction of Emotional Distress on the Plaintiffs. An example of the messaging pushed by the Waco PD and the DA's office is contained in a statement made by police spokesman Swanton, "A bunch of criminal element biker members that came into our community and unfortunately did just that... This is not a bunch of doctors and dentists and lawyers riding Harleys. These are criminals on Harley-Davidsons."[22]    None of the Plaintiffs are what you would consider "criminal elements". They are family men. Three of the four are married. The fourth is seeking his master's

---

[22] P. Swanton taken from Waco Extremist - **Waco & McLennan County Law Enforcement: The Embarrassing of Central Texas.**

degree. They have a small motorcycle club in Austin dedicated to helping foster children, abused children, veterans and homeless. In spite of their harmless lifestyles, the Defendant law enforcement representatives castigated them as criminals and charged them with engaging in organized crime? Granted this was done with ZERO evidence, but that didn't stop them. Compounding that insult, when they determined that tens of thousands of dollars in bail for fake trumped up charges wasn't sufficient, they went back and raised it to **$2,000,000.00 (TWO MILLION DOLLARS) on three of the plaintiffs!** They told the entire nation that these three men, who had just ridden up to the restaurant, who had no illegal weapons and who did not participate in any criminal action nor any of the violence at Twin Peaks, that they were now fugitives from the law, armed and dangerous, and essentially America's Most Wanted. (Everything that has been said by ANY of the law enforcement Defendants in this case about ANY of these Plaintiffs are bold faced lies. Not only are they all **BOLD FACED LIES**, the Defendants **KNOW** them to be bold faced lies. These false stories have destroyed the lives of these good men. It was done in a premeditated manner, and done to personally harm every Plaintiff as much as possible. It was done with malice and with complete disregard to their legal rights. They were each slandered, libeled and defamed, not only in the charges that were initially made, but in the reasons that they were subsequently cast as essentially "escaped convicts" by the Defendants in law enforcement. As the LA Times stated, "Three bikers had already been arrested after the melee on suspicion of coming to the scene with more weapons, and Swanton had a warning for other bikers thinking of coming to seek revenge."

"We are prepared to deal with those individuals if they come to Waco," Swanton said, adding, with a bit of Texas swagger, that "criminal biker gang members" had already "felt the wrath of law enforcement in Waco." [23]

---

[23] 9 killed, at least 170 arrested after Waco biker gang shootout, by Matt Pierce and Molly Hennessy-Fiske, LA

This was all done in a manner to inflict the maximum amount of embarrassment, ridicule, humiliation and shame and to cause each Plaintiff to suffer an immense amount of financial strain, emotional pain and stress. This conduct was grossly negligent to some degree, and for the most part intentional in nature. Plaintiffs sue for all damages associated to that harm for all elements they are entitled to receive.

101. Plaintiffs also sue for false arrest/imprisonment/unlawful restraint remedies inclusive of Title V Tx Penal Code sec. 20.02 and all related chapters.

102. Law Enforcement is not above the law, and Americans cannot be illegally charged for crimes they did not commit. In this instance, the Defendants in law enforcement fraudulently and wrongfully arrested each of the Plaintiffs with ZERO reason. "Because you are wearing leather vests" is not probable cause to arrest. There was no probable cause. Nonetheless, each was arrested, and each had their property improperly taken from them. Each was detained in handcuffs, one for as long as fourteen (14 ) hours, and under most circumstances put in holding cells and left for 24 hours with essentially no care, food or other needs, with a significant amount of that time still left in handcuffs. Each was charged with **engaging in organized crime** when there were NO specific elements of any organized crime cited, and more importantly, NO evidence cited of ANY actual criminal conduct. This is just the same vague boilerplate charge, filed by the same officer against all 177 patrons, without ANY evidence. Under any normal circumstances, in any other city, in the event of a shooting at a public location, perhaps law enforcement would want to get everyone's name and number to be able to talk to them further at a later date. Perhaps they would even want to take some of them "downtown" to specifically talk to them at that time. But arresting everyone there and charging every one of them with the same boilerplate charge, NONE with any underlying evidence is a SHOCKING course of conduct. Nowhere can Plaintiffs find ANYTHING

similar in nature in the annals of American Jurisprudence.  To have an event involving specific identified actors then result in the arrest, detention and charges against almost 200 others just because "they were there" is outrageous.  **Two years later none of these Plaintiffs have been indicted!!!**

## DAMAGES

103.    Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King incorporate the foregoing allegations in paragraphs 1-96 of their Complaint as if fully set forth herein and made a part hereof.

As a proximate result of the above-described conduct of Defendants City of Waco, County of McLennan,   Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King suffered damages.  As mentioned above, Plaintiff Jim Harris has not been allowed to travel and volunteer with Patch Adams and Doctors without Borders and was rejected by Mexican authorities from entering the country.  Additionally, he will not be able to sit for the test to gain his license to counsel troubled individuals and start the career that he has gone to school and in debt for.  Like the other three plaintiffs, Jim Albert Harris has been **branded by the scarlet letter "A" for being arrested and charged with "engaging in organized crime," which with the shooting deaths it means they were complicit and subject to 15 years to life if convicted.**  This is a terrible weight that is on the shoulders of all four of these men!  Jim has suffered from PTSD, including nightmares.  Being the only unmarried man of his group that was arrested, Jim has found that online dating is no longer possible.  As soon as they Google his name, his arrest in Waco and the insane lies told by officer Swanton  and Abelino Reyna pop up and Jim never hears from them again.  He cannot change jobs or move because a background check will cause him to be denied a job and a place to live.  This incident and the attendant lies of police will always be out there on the internet, it will not go away, and it affects all four of the Plaintiffs.

104.    As a proximate result of the above-described Defendants, City of Waco, Abelino Reyna, Manuel Chavez, Brent Stroman, Peaktastic Beverage, LLC d/b/a Twin Peaks Restaurant, front Burner Restaurants GP LLC., and Twin Restaurant Investment Company, LLC., and the aforementioned John Does of each agency, Plaintiff, Drew King has suffered damages. At the time of his arrest, Drew King was scheduled three days later to go "on a trip of a lifetime" on a leased 100 plus foot yacht with his girlfriend and her family. It was on this dream vacation that Drew had planned to propose to his girlfriend, the memory of which would last a lifetime together. Instead he had to explain to her and her parents the circumstances of his felony arrest. They all went without him while he sat in a dirty, overcrowded jail. He suffered terrible nightmares every night for a month and a half. He would dream of people being shot, his being arrested and thrown into a closet...terrible things that seemed to go on forever. Like the others, he has suffered from the notoriety of the arrest. The roofing company he works for as a Project Manager is based in San Antonio. One of their biggest clients is the military. Due to his arrest he is not allowed on any of the military bases which restricts where he can work for his company. There are other jobs that come up requiring a background check and Drew is concerned that he will not be able to work on any of those. Drew King also signed up to take the fireman's test to become a fireman. Due to his arrest he was denied taking the test. By this point, the D.A.'s office and Abelino Reyna should know that none of the plaintiffs did anything illegal that day and yet intentionally refuse to clear their names, causing their ongoing hardship and damages to increase.

105.    As a proximate result of the above-described Defendants City of Waco, Abelino Reyna, Manuel Chavez, Brent Stroman, Peaktastic Beverage, LLC d/b/a Twin Peaks Restaurant, front Burner Restaurants GP LLC., and Twin Restaurant Investment Company, LLC., and the aforementioned John Does of each agency, Juan Carlos Garcia suffered

damages.  Juan Carlos Garcia is a licensed Professional Engineer (PE) in the state of Texas, graduating from Texas A&M in College Station, Texas in 1995, with a Bachelor of Science in Civil engineering and was working for the City of Austin Public Works Engineering Services Division as a Supervising Engineer.  He is married and has two children.  After his arrest in Waco, bonding out and returning to Austin, and then having to turn himself in due to the second arrest warrant, a local Austin TV station reported the story (lies) they were told by Waco police spokesman Patrick Swanton.  Not only was Juan Carlos Garcia , Jim Albert Harris and Drew King shown doing the "perp walk" in the orange jumpsuits, the station broadcast a map of Austin with the locations of their residences indicated and the addresses listed.  The reporter made sure to mention that he worked for the City of Austin as a Public Works Engineer.  Because Juan Carlos Garcia is a public servant, anytime the Twin Peaks massacre is in the newspaper, his name is mentioned.  "At least two men who were charged work for local governments in Texas. Mr. Garcia, an engineer for the public works department in Austin who has worked for the city since 2009, was placed on administrative leave on Tuesday, a department spokeswoman, Carolyn Perez, said..."[24]  Subsequently, numerous calls were made demanding that Carlos Garcia be fired from his job.  It is not good when your employer has to use a public spokesperson to announce that you have been placed on administrative suspension for something that happened to you through no fault of your own. He has endured the nightmares, embarrassment, horrible jail conditions, and fear for his life.  The thought of his family suffering through all of this has hurt him the worst.  His family had to endure a week of news reporters at his residence and interrogating his neighbors.

---

[24] Mass Roundup of Bikers in Waco Shootout Tests Limits of Court System, By MANNY FERNANDEZ, SERGE F. KOVALESKI and DAVID MONTGOMERYMAY 19, 2015 NY Times

106.    As a proximate result of the above-described Defendants City of Waco, Abelino Reyna, Manuel Chavez, Brent Stroman, Peaktastic Beverage, LLC d/b/a Twin Peaks Restaurant, front Burner Restaurants GP LLC., and Twin Restaurant Investment Company, LLC., and the aforementioned John Does of each agency, Bonar Crump Jr., has suffered damages.   As club President of the Grim Guardian, Bonar Crump Jr., believes his club members are like his extended family.   They have a regular "family night" once a month for the club members and families.   The shoot out and arrest of he and three of his best friends has caused a lot of anxiety, stress on his marriage and many other problems.   Like the others, he suffered from nightmares, embarrassment and humiliation.   He has spent many hours with a therapist at his own expense to help to get past the PTSD this traumatic event and it's after effects.   One of his darkest moments came when he was told he was being released only to discover that he wasn't.   He was taken from his cell to another detention area prior to being released where he waited for many hours.   He was to be fitted with his ankle monitor before he could leave.   He could see his wife and his daughter through the one-way window; they had driven all the way from Austin to pick him up.   Bonar watched as Drew King and Juan Carlos Garcia got released ahead of him, but when his time came to be fitted for the ankle monitor, the employee representative of Recovery Health Care, who outfitted the ankle monitors, decided it was 5 p.m. on Friday and he was done for the week.   Bonar Crump Jr., after posting bail, had to stay another weekend in jail and tell his wife and his daughter via phone to go back to Austin without ever even being able to see him.   This is what finally broke him.   He could not sleep or eat all weekend.   He stayed in his cell during the brief recreation time.   When Monday came and he was finally released he came out and finally saw his wife and daughter and broke down again.   The promise of release and callous manner denied release was the worst moment for him and his family.

107.    As a proximate result of Defendants' City of Waco, County of McLennan, actions,

Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King were required to retain the services of criminal defense lawyers to represent them.

108.    As a direct and proximate result of Defendant's actions, Jim Albert Harris was illegally incarcerated for approximately 12 days.

109.    As a direct and proximate result of Defendant's actions, Bonar Crump Jr. was illegally incarcerated for approximately 15 days.

110.    As a direct and proximate result of Defendant's actions, Juan Carlos Garcia was illegally incarcerated for approximately 12 days.

111.    As a direct and proximate result of Defendant's actions, Drew King was illegally incarcerated for approximately 12 days.

112.    As a proximate result of Defendants' actions, Plaintiffs were required to retain the service of a bondsman to post bond in order to be released from custody.

113.    As a proximate result of Defendants' actions, Plaintiffs were subject to a 10:00 p.m. curfew, limited to single county, some had to endure the embarrassment and hassle of wearing ankle monitors that had to be charged for three to four hours a day while being worn, and other restrictions of their liberty as a condition of their bonds.

114.    As a direct and proximate result of Defendant's actions, Plaintiffs were not allowed to communicate in any way with their best friends who were members of their motorcycle club for over a year.

115.    As a proximate result of Defendants' actions, Plaintiffs have suffered lost income and will suffer from a loss of earning capacity in the future.

116.    As a proximate result of Defendants' actions, Plaintiffs suffered mental pain and anguish and will suffer the same in the future.

117.    As a proximate result of Defendants' actions, Plaintiffs suffered damage to their reputations and will continue to suffer damage to the reputations in the future.

## PRAYER FOR COMPENSATORY DAMAGES

118.    As a direct and proximate cause of the actions and inactions of the Defendants, each Plaintiff has been harmed in amounts far in excess of the minimum jurisdictional limits of this court. Each plaintiff seeks full restitution from all defendants for all harm caused, including but not limited to emotional damages, financial damages, and all other elements of incidental and consequential damages each have incurred and will likely continue to incur for the remainder of their lives.  The defendants conduct has all but destroyed those lives.

## PRAYER FOR PUNITIVE DAMAGES

119.    Rarely in American jurisprudence has such callous and wanton disregard for the rights of a fellow man been more forsaken and abused, by more individuals, acting within color of law, than what the Defendants perpetrated against Plaintiffs and others on May 17, 2015, and continued to perpetrate from that date to the present.  Rarely has it ever been shown that more individuals acted with such organized malice to destroy the lives of others because they simply did not share some of the same perceived lifestyles. Some of your Defendants also acted for personal gain, to obtain fame and recognition that would result in personal career moves to their own benefit.  Nor have ANY of the defendants shown ANY remorse for ANY of their actions.  In spite of the blatant abuses, the blatant lies, the blatant misconduct and in spite of the fact that it is now raining civil lawsuits on the Defendants for their malfeasance. The departments involved, the law enforcement agencies involved, the judiciary involved, and sadly to some significant degree the communities and citizens involved have all collectively ignored these realities and facts. Because of the utmost egregious conduct of the defendants, their callousness, their complete lack of remorse, their refusal to even acknowledge they have done anything wrong, and for all of the collective Defendant's aforementioned actions, Plaintiffs seek **ONE $1,000,000,000.00 BILLION DOLLARS** in punitive or exemplary damages and compensation for the intentional, unconstitutional,

negligent and grossly negligent conduct of the Defendants. What happened in Waco should never happen again, and what these Defendants did should never happen again.   The motorcycle riding community, which is many millions in number, will be watching the outcome of these proceedings with an extreme amount of attention. It is time for our society, our law enforcement, and our legal system to recognize that ALL citizens have equal rights, and that includes all citizens who choose to ride motorcycles, who choose to fraternize with other motorcyclists, who choose to enjoy the brotherhood of club membership, who choose to enjoy the freedoms the roads and motorcycles provide,  and who choose to live a lifestyle that is respectful of others and expects respect in exchange, from people who come from all walks of life to share a common bond.  Narrow minded people with narrow minded bigotry towards others, who have no problem with stereotyping/profiling a large group of people, such as motorcyclists, have never prevailed in the long term in America, and they will not prevail here. Waco is a tragedy at many levels. But the good that will come from it will be a full exposure of what has happened to the biking community within certain elements of law enforcement over the years, from those who could not adapt to the evolution of our society that allowed for the rights of our Constitution to be shared equally by ALL of its citizens, regardless of ethnicity, religion, country of national origin, socio-economic background, sexual preference, age or any other BIAS.  The harassment. The discrimination. The violations of due process. Yes, Black Lives Matter.  Yes, Gay Lives Matter. So do Bikers Lives Matter. **ALL LIVES MATTER.  ALL LIVES ARE EQUALLY VALUABLE.  To discriminate and paint a whole group with the same broad brush, whether it be by race, gender, profession, or as we have here, members of motorcycle clubs.  This should never be acceptable under any circumstance!** Especially when the government decides to use its awesome and deadly power against all members of said social group without regard to whether or not they warrant such treatment!  Would you treat all members of every local

Chamber of Commerce like criminals if a small percentage of them were embezzling funds? Yet, there are still isolated pockets in America and certain individuals within law enforcement where those fundamental tenets are still not resonating….but they will. For those few, regardless of who they are, or where they are, when they believe that THEY are above the law, that THEY can decide who does and doesn't get constitutional protections that THEY can decide who gets rights and who doesn't, they will be outed…and they will be exposed….and they will pay.

## JURY DEMAND

120.    Plaintiffs Jim Albert Harris, Bonar Crump Jr., Juan Carlos Garcia, and Drew King demand a trial by jury and tender herewith the appropriate jury fee.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs Jim Albert Harris, Bonar Crump, Jr., Juan Carlos Garcia, and Drew King pray that upon final trial they recover a judgment against Defendants for:

(a.)    Actual damages;

(b.)     Pre-judgment and post-judgment interest as provided by law;

(c.)    Interest at the highest rate allowed by law;

(d)    Treble damages as available by law

(e.)    Exemplary damages;

(f.)    Cost of suit;

(g.)    Attorneys' fees pursuant to 42 U.S.C. § 1998; and

(h.)    For such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

BRENT COON & ASSOCIATES

By:

Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
Email: Brent@bcoonlaw.com
215 Orleans
Beaumont, Texas 77701
Tel. (409) 835-2666
Fax. (409) 835-1912
ATTORNEY(S) FOR PLAINTIFFS